925 F.2d 81
 Robert WEINER; Margaret Weiner; Mark Weiner; Robert
Weiner, as personal representative of the estate
of Steven Weiner, Plaintiffs-Appellees,
v.
BLUE CROSS & BLUE SHIELD OF MARYLAND, INC., Defendant-Appellant,
and
Blue Cross of Maryland, Inc.; Blue Shield of Maryland,
Inc.; Blue Cross/Blue Shield of Florida, Inc., Defendants.
 No. 90-1008.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1990.
Decided Jan. 31, 1991.
 
 Shale David Stiller, argued (Leonard E. Cohen, Allan P. Hillman, William L. Reynolds, Frank, Bernstein, Conaway & Goldman, H. Russell Smouse, Whiteford, Taylor & Preston, on brief), Baltimore, Md., for defendant-appellant.
 Larry S. Stewart, argued (James B. Tilghman, Jr., Stewart, Tilghman, Fox & Bianchi, P.A., on brief), Miami, Fla., for plaintiffs-appellees.
 Before HALL and MURNAGHAN, Circuit Judges, and CACHERIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 MURNAGHAN, Circuit Judge:
 
 
 1
 Robert Weiner, Sr., a gasoline station owner and operator in Broward County, Florida, wanted to obtain group health insurance for himself and family members. Through a Florida association of gasoline retailers, he obtained the coverage for his family which he desired. What he received was a group policy showing a national group, the Service Station Dealers of America, as an employer and designating those covered by the policy as "employees." The policy never was, however, subscribed to by the Service Station Dealers of America, being signed instead by an insurance agency marketing group plans for Blue Cross.
 
 
 2
 The policy obtained by Robert Weiner, Sr. covered himself and his wife and two dependent children, Steven and Mark. Another son, Robert Weiner, Jr., was an employee of his father's gas station and was over the age of majority. Consequently, he obtained an individual policy.
 
 
 3
 Then, in 1982, tragedy struck. Steven was diagnosed as suffering from, and died less than two years later with, AIDS. Mark was rendered a quadriplegic as the result of an automobile accident.
 
 
 4
 Benefits were paid under the policy for medical care until August 1983, when such benefits were discontinued on the grounds that Steven and Mark were no longer covered. Robert Weiner, Sr. promptly filed suit to compel continuation of benefits. Approximately seven months later, Blue Cross of Maryland, Inc. resumed payments under the policy and reimbursed Weiner for past payments which had been omitted. Blue Cross has, since March of 1984, complied with all contractual obligations under the policy.
 
 
 5
 However, claiming substantial hardship, Weiner and his wife sued Blue Cross of Maryland (as well as Blue Cross/Blue Shield of Florida, a servicing agent) in a Florida state court. Fraud, negligence, and intentional infliction of emotional distress were asserted. The case proceeded to trial on the merits, and judgment was entered for $5,000 in compensatory damages and $5,000,000 in punitive damages against Blue Cross of Maryland. Compensatory damages of $200,000 and punitive damages of $1.5 million were assessed against Blue Cross/Blue Shield of Florida. The trial judge further awarded $1.4 million in attorney's fees. Judgment, entered in September 1986, was under Florida law to bear interest at 12% per annum.
 
 
 6
 An appeal was taken to the Florida Fourth District Court of Appeal where the Florida Blue Cross, for the first time, made the contention which is the focus of the case we are called upon to resolve. It asserted that the health care plan in question involved an employer and an employee and consequently was covered by the Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001 et seq. (ERISA). It was thus argued that, since ERISA confers exclusive and preemptive jurisdiction on the federal courts, the trial court should have been impotent to enter the judgment. The request was made to vacate the judgment or, alternatively, to remand to the trial court for a further hearing on the preemption issue.
 
 
 7
 We need not linger over the question of whether, if the plan were indeed covered by ERISA, the case should not have been heard by a state court. We may at least arguendo assume that such would be true. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, before we even reach that question, which depends on ERISA's governing the plan, we first must determine whether the Florida state courts found that the plan did or did not constitute an ERISA plan. The Florida intermediate appellate court determined that the plan was not governed by ERISA on the basis that no employee plan had been shown to exist. Blue Cross/Blue Shield of Florida, Inc. v. Weiner, 543 So.2d 794 (Fla.Dist.Ct.App.1989). Thereafter the Florida Supreme Court denied Blue Cross' request for review, 553 So.2d 1164 (1989), and the United States Supreme Court denied certiorari, --- U.S. ----, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990).
 
 
 8
 Blue Cross/Blue Shield did not give up easily. When Weiner filed the Florida judgment in the Circuit Court for Baltimore County under the Uniform Enforcement of Judgments Act, Md.Code Ann., Courts and Jud.Proc.Art., Secs. 11-801 et seq., Blue Cross removed the case to the United States District Court for the District of Maryland, filing a motion to vacate or, in the alternative, to hold an evidentiary hearing on whether the plan was covered by ERISA. Judge Paul V. Niemeyer, then of the United States District Court for the District of Maryland, refused to take a step which would interfere with the res judicata status of the Florida case. Weiner v. Blue Cross of Maryland, 730 F.Supp. 674 (D.Md.1990).
 
 
 9
 The question before us is a relatively simple one blown to somewhat grandiose proportions because of the huge amount of money involved. It is well established that "a former judgment in a state court is conclusive between the parties and their privies in a federal court when entered upon an actually contested issue as to the jurisdiction of the court over the subject matter of the litigation." Stoll v. Gottlieb, 305 U.S. 165, 173, 59 S.Ct. 134, 138, 83 L.Ed. 104 (1938). To escape the effect of the Stoll decision, Blue Cross seeks to invoke the principle of Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). However, Kalb represents a narrowly defined limitation (not here present) on the holding in the Stoll case. Such a situation arises only in circumstances indicating that the question of which jurisdiction, state or federal, should control was intended to be resolved solely by a federal court. To similar effect, Blue Cross cites the Restatement (Second) of Judgments Sec. 12 and 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3536 (2d ed. 1984).
 
 
 10
 But, because resolution of the question before us may be by state or federal court, cases of the kind presented in Kalb (a case raising the question of whether federal bankruptcy law or state law should govern the case) are flatly distinguishable from cases facing the jurisdictional issue of ERISA vel non. See, e.g., Browning Corp. Int'l v. Lee, 624 F.Supp. 555, 557 (N.D.Tex.1986); cf. International Longshoremen's Ass'n v. Davis, 476 U.S. 380, 393, 106 S.Ct. 1904, 1913, 90 L.Ed.2d 389 (1986); Blue Cross and Blue Shield of Maryland, Inc. v. Weiner, 868 F.2d 1550, 1555 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 239, 107 L.Ed.2d 190 (1989) (affirming a Florida federal district court decision to abstain with respect to the same question with which we are presented).
 
 
 11
 Here, determining that on the merits there were no grounds sufficient to justify disregard of the result where jurisdiction existed, we do not interfere.
 
 
 12
 The commentators are assiduously careful to make the very same distinction. See 13A Wright, Miller & Cooper, Federal Practice and Procedure, Sec. 3536 n. 12 at 539 (1984), and Karen Nelson Moore, Collateral Attack on Subject Matter Jurisdiction: A Critique of the Restatement (Second) of Judgments, 66 Cornell L.Rev. 534, 542, 560-61 (1981).
 
 
 13
 We conclude, therefore, that the decision giving res judicata effect to the Florida judgment should be
 
 
 14
 AFFIRMED.