[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13709
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-20822-JEM

DEVON A. BROWN,

Plaintiff-Appellant,

versus

ANN COFFIN,
Florida Department of Revenue, Program Director,
individual and official capacity,
FLORIDA DEPARTMENT OF REVENUE,
Office of Child Support Enforcement, Title IV-D Agency,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 21, 2019)

Before MARCUS, WILSON and HULL, Circuit Judges.

PER CURIAM:

Devon Brown, proceeding pro se, appeals the district court's order dismissing his amended civil complaint for lack of subject matter jurisdiction based on the Rooker-Feldman[1] doctrine. In his complaint, Brown requested that the district court review and reject final state court child-support and enforcement orders entered against him after he lost in state court. On appeal, Brown does not address in his initial brief the district court's ruling that his claims were barred by the Rooker-Feldman doctrine. After thorough review, we affirm.

We typically review a district court's application of the Rooker-Feldman doctrine de novo. Lozman v. City of Riviera Beach, 713 F.3d 1066, 1069–70 (11th Cir. 2013). The party asserting the claim bears the burden of establishing federal subject matter jurisdiction. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

Generally speaking, the Rooker-Feldman doctrine bars federal district courts from reviewing state court decisions because lower federal courts lack subject matter jurisdiction over final state-court judgments. See Alvarez v. Att'y Gen. for Fla., 679 F.3d 1257, 1262–64 (11th Cir. 2012). The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

---

[1] The Rooker-Feldman doctrine derives from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

2

district court review and rejection of those judgments." Nicholson v. Shafe, 558 F.3d 1266, 1273 (11th Cir. 2009) (quoting Exxon Mobil Co. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). The doctrine applies not only to federal claims actually raised in the state court, but also to claims that were not raised in the state court but are inextricably intertwined with the state court's judgment. Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009). A claim is inextricably intertwined if it would effectively nullify the state court judgment, or if it succeeds only to the extent that the state court wrongly decided the issues. Id. However, it does not apply when a party did not have a reasonable opportunity to raise his or her federal claims in state proceedings. Id. We've applied Rooker-Feldman principles to child custody proceedings on multiple occasions and have concluded that, under Rooker-Feldman, we may not interfere with final judgments rendered by state courts. See Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332–35 (11th Cir. 2001); Liedel v. Juvenile Court of Madison Cnty., Ala., 891 F.2d 1542, 1545-46 (11th Cir. 1990); Staley v. Ledbetter, 837 F.2d 1016, 1017–18 (11th Cir. 1988).

In Florida, judges of the circuit court appoint "general magistrates" to hear certain matters, including child support enforcement actions, referred to them with consent of all parties. Fla. R. Fam. P. 12.490. The rules provide for state judicial review of the general magistrate's report and recommendation. Id. The parties may file exceptions to the report within 10 days from the time it is served on them. Id.

3

Then, the circuit judge must review the entire record and give a hearing on the exceptions, and may amend the order, conduct further proceedings, or refer the matter back to the general magistrate for further proceedings. In re Family Law Rules of Procedure, 663 So. 2d 1049, 1051–52 (Fla. 1995); Fla. R. Fam. P. 12.490, 12.491. If no party files exceptions, a circuit judge reviews the report and enters an order, at which point a party may file a motion to vacate and request a hearing on the court's order on the magistrate's recommended order. Hinckley v. Dep't of Revenue ex rel. K.A.C.H., 927 So. 2d 73, 75 (Fla. Dist. Ct. App. 2006); Fla. R. Fam. P. 12.491(f). An appeal from that order may be appealed to the state appellate court. Robinson v. Robinson, 928 So. 2d 360, 362 (Fla. Dist. Ct. App. 2006).

An issue is abandoned when a party seeking to raise a claim or issue on appeal fails to plainly and prominently raise the issue. Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681, 683 (11th Cir. 2014). Although we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Moreover, we will not address arguments raised for the first time in a pro se litigant's reply brief. Id. It is insufficient for a party to make only passing references to a claim without supporting argument or citation to authority. Sapuppo, 739 F.3d at 681–82. Liberal construction of pro se pleadings "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to

4

sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotations omitted).

Here, Brown has abandoned any challenge to the district court's order on appeal because he does not address the order in his initial brief. Timson, 518 F.3d at 874. Additionally, Brown makes no reference the Rooker-Feldman doctrine. He argues only that the district court "did not dismiss [the case] based upon any legal argument based upon the merits," which does not adequately identify the issue and is no more than a passing reference to the district court's decision without supporting argument or citation to authority. Sapuppo, 739 F.3d at 681–82. Although Brown says in his reply brief that the Rooker-Feldman doctrine does not apply because he was not seeking review of state court rulings, that child support laws are "treaties" and "contracts," not "law," and that family courts are not Article III courts, we will not address arguments raised for the first time in a pro se litigant's reply brief. See Timson, 518 F.3d at 874. Thus, Brown has abandoned any challenge to the district court's order on appeal.

But even if we were to review the issue on appeal, we would conclude that the district court properly sua sponte dismissed Brown's action for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Brown, who lost in state court, requested that the district court review and reject the final state court child-support and enforcement orders, a request he made clear in both his prayer for relief

5

in the amended complaint and his motion to "temporarily stop the Title IV-D child support enforcement until this court constitutionally solve[s] the case." While he claims he is seeking relief from the Florida Department of Revenue's administrative actions in enforcing a child support order, the harm he actually seeks to remedy is the Florida state court's judgment in favor of the Department. See Staley, 837 F.2d at 1017–18. As a result, Brown essentially has admitted that success in this case requires a reversal of the state court's decision. Nicholson, 558 F.3d at 1273.

As for Brown's federal claims that the Florida Department of Revenue and its Director violated his constitutional rights by obtaining orders to garnish his tax return and suspend his driver's license, pursuant to the child support order, they are inextricably intertwined with the state court judgment. Casale, 558 F.3d at 1260. Specifically, he challenges the authority of the state magistrate to issue the orders enforcing his child support obligations, the process he was afforded, and the validity of the child support enforcement statute, alleging that the state magistrate had not taken the proper oath and violations of his rights to due process and trial by jury, and rights under the Fair Debt Collection Practices Act. Succeeding on these federal claims would effectively nullify the state court judgment, as he expressly requests, because it would require the federal court to deem the state court's authorization to use "additional remedies to enforce the arrearage" unconstitutional. See Casale, 558 F.3d at 1260; Liedel, 891 F.2d at 1545–46. Therefore, his allegations are

6

inextricably intertwined with the underlying state-court dispute regarding his child support obligations.

Finally, Brown had a reasonable opportunity to raise his constitutional arguments before the state courts. See Goodman, 259 F.3d at 1332–33. Unlike the plaintiff in Goodman, who challenged a search that was not discussed in her child custody hearing and who therefore had no opportunity to raise her constitutional challenges to the search, Brown's challenges to the state magistrate's authority, the process afforded him, and the validity of the child support statute could have been raised in the state court proceeding and on appeal, in accordance with Florida law. See id.; Fla. R. Fam. P. 12.490; Robinson, 928 So. 2d at 362. Thus, to the extent Brown believes the state-court orders were delivered without authority, he must seek a remedy in state court, since his claim invites review and rejection of the state-court judgment by asking the federal court to determine whether it was wrongfully issued. Because we do not have the jurisdiction to overturn the Florida state court's decision, we affirm the district court's dismissal of Brown's action for lack of subject matter jurisdiction.

**AFFIRMED**.